[File No. 6139.]

C. F. TICKFER, Respondent, v. THE INVESTMENT CORPORA-
TION OF FARGO, a Corporation, Appellant.

(249 N. W. 702.)

614

Opinion filed July 17, 1933.

*Burnett, Bergesen & Haakenstad*, for appellant.

*Fredricks & Fredricks*, for respondent.

BIRDZELL, J. The plaintiff and the Lees Motor Company entered into a contract, dated January 9, 1931, which evidences the purchase by the plaintiff of a Chrysler automobile. Under this contract, $506, a deferred balance of the price, was payable in installments of $43 per month until paid. This deferred balance was payable at the office of the Investment Corporation of Fargo, North Dakota, and the contract

was assigned to the Investment Corporation, the defendant in this action, immediately after it was executed by the parties. The plaintiff paid the installments due under the contract until October 9th. He gave a check for this installment on November 9th, which was not honored for lack of funds, and he made no payment thereafter. In February, 1932, when all the remaining balance of $161.20 was due and unpaid, the defendant took possession of the car in Jamestown and removed the same to Fargo. The plaintiff claimed he did not acquiesce in the defendant's taking possession and contends that possession was obtained through a species of artifice or fraud. Immediately after possession was taken, this action was instituted. In his complaint the plaintiff negatives the taking of the property under any legal process whatsoever, alleges wrongful taking and wrongful detention, and asks judgment for the return of the automobile or in case a return cannot be had "for the reasonable usable value of said car between the time of taking and the return thereof."

By stipulation a jury was waived and the case was tried before the court. A judgment was entered fixing the value of the car at $850 and damages for detention at $125. It contained a provision for crediting the defendant with the amount of the unpaid purchase price, $161.20. The defendant moved to vacate the judgment and amend the findings and for a new trial. The instant appeal is from the judgment and the order denying this motion.

The contract contains stipulations that are characteristic of contracts for conditional sales, to the effect that the title to the property shall not pass until the amount of the deferred payments is fully paid in cash, the assignee to be entitled to all the rights of the seller; that in case of default in complying with the terms of the contract "the seller may take immediate possession of said property without demand (possession after default being unlawful), including any equipment or accessories thereto; and for this purpose the seller may enter upon the premises where said property may be and remove same. The seller may resell said property, so retaken, at public or private sale, without demand for performance, with or without notice to the purchaser (if given notice by mail to address below being sufficient), with or without having such property at the place of sale, and upon such terms and in such manner as the seller may determine; the seller may bid at any public sale.

From the proceeds of any such sale, the seller shall deduct all expenses for retaking, repairing and selling such property, including a reasonable attorney's fee. The balance thereof shall be applied to the amount due; in case of deficiency the purchaser shall pay the same with interest and the purchaser does hereby confess judgment in the amount of such deficiency." It contains the further stipulation that the "Seller shall have the right to enforce one or more remedies hereunder, successively or concurrently, and such action shall not operate to stop or prevent the seller from pursuing any further remedy which he may have hereunder, and any repossession or retaking or sale of the property pursuant to the terms hereof shall not operate to release the purchaser until full payment has been made in cash."

The plaintiff states the "pivotal law question" as follows:

"That the relations between the plaintiff and the defendant were that of mortgagor and mortgagee from the beginning and that the conduct of the defendant in resorting to trickery and fraud in obtaining possession of the automobile covered by that mortgage, and its subsequent conduct with respect to it, amounted to a wrongful conversion of the property, resulting in an extinguishment of the lien of the mortgage, and that in a replevin action, the debt, though existent, cannot be offset against the plaintiff's right to possession of the property."

The plaintiff argues that the contract is in reality a mortgage and considering the plaintiff as being in default the defendant would be entitled to the possession of the car only for the purpose of foreclosure; but that, inasmuch as at the time of the commencement of the action the defendant had proceeded to treat the car as its own without foreclosing the mortgage, it had converted it and through its wrongful conduct had extinguished whatever rights it had under the mortgage. .

The principal circumstances relied upon to show that the defendant was a mere mortgagee are, that the plaintiff was in possession of the car for some time before the contract was made, which is an indication that he was the owner and that the contract was merely a device to enable the seller of the car to borrow money upon it; that the defendant was not engaged in the business of selling automobiles and consequently would not ordinarily have title to cars to be reserved until payment; that its business was primarily that of loaning money; and that the contract stipulations purporting to give to the seller the right to resell

the property taken and make application of the proceeds is in effect a recognition that title is in the purchaser and that the defendant is a mortgagee.

Clearly, we think these arguments fall short of establishing that the defendant is a mortgagee. The record is practically devoid of evidence to show that there was any actual intention to give a chattel mortgage. While it does show that the plaintiff was in possession of the car for a period of time prior to the execution of the contract, it does not appear that he had settled for it and become the owner. It shows rather that he was to become the owner on complying with the terms of the contract.

Our law recognizes contracts of conditional sale as distinct from mortgages. Comp. Laws 1913, § 6757; § 6002a1, 1925 Supplement to the Compiled Laws of 1913; Morrison Mfg. Co. v. Fargo Storage & Transfer Co. 16 N. D. 256, 263, 113 N. W. 605, 607; Poirier Mfg. Co. v. Kitts, 18 N. D. 556, 120 N. W. 558; Pfeiffer v. Norman, 22 N. D. 168, 133 N. W. 97, 38 L.R.A.(N.S.) 891. It recognizes the validity of contracts under which the title is reserved and gives effect to provisions therein whereby the right of possession is lost to the purchaser through the failure to fulfill his obligation to pay the price. These attributes of the contract are just as fully recognized under our law as are the principles that apply in protecting the rights of the parties under a chattel mortgage.

To answer more specifically the contentions of the plaintiff, the contract itself provides that the assignee shall be entitled to all the rights of the seller. The assignment of the contract by the seller to the defendant amounted to a transfer of title which the assignee thereafter held subject to the contract. See 24 R. C. L. p. 478; 37 L.R.A.(N.S.) p. 72, note. This is especially true here in view of the express stipulation referred to and of the further provision making the deferred payments payable at the office of the investment corporation, which was the assignee, together with the fact that a form of dealer's assignment to the investment corporation was printed upon the contract below the signatures of the parties. This is an adequate answer to the argument that the business of the defendant was that of loaning money rather than of selling automobiles. If the defendant would advance money on automobile security only where the title had never been

vested in the purchaser and was not to pass to him until the full purchase price was paid in cash, it is immaterial whether the defendant was an automobile dealer or a financing agency. The terms of the contract control.

That provision of the contract whereby it is stipulated the seller may resell the property and apply the proceeds, purports to give the further right to the seller to collect the balance. Indeed, it is accompanied by a confession of judgment in the amount of such deficiency. Without expressing any opinion as to the validity or effect of this stipulation as enabling the seller or the assignee to recover a deficiency or any future installments after taking possession of the chattel, we are of the opinion that its purpose is clearly to enlarge the right of the seller in this respect rather than to restrict the force of the contract to the confines of a chattel mortgage. It will be noted that it does not *require* the seller to resell the chattel; its language is permissive. In the event of a resale it purports to authorize a deficiency judgment for any balance remaining after application of the proceeds. This is altogether consistent with the immediately following paragraph of the contract which purports to make the seller's remedies cumulative and which provides that repossession or retaking or sale of the property pursuant to the terms of the contract shall not operate to release the purchaser until full payment has been made in cash.

We are not called upon in this case to pass upon the validity or legal effect of these provisions in the contract, but they are obviously inserted to avoid the effect of the general holding that the seller's exercise of his right to reclaim the goods amounts to a rescission of the contract and therefore precludes an action for the price or any unpaid balance thereof (2 Williston, Sales, 2d ed. § 579), and likewise to avoid the effect of an election or waiver. See Dowagiac Mfg. Co. v. Mahon & Robinson, 13 N. D. 516, 524, 101 N. W. 903, 905. Inevitably, any contract whereby money is made payable in the future to one party and its payment secured by a chattel to which the party paying will have a clear title upon making the payments takes on the aspect of a mortgage. "Such a transaction," says Williston, § 579, supra, "is in its essence analogous to a transfer of title to the buyer, and a mortgage back by the buyer to the seller in order to secure the price." But nevertheless, as pointed out above, the law recognizes this type of contract as

being distinct from a mortgage and gives effect to the provisions making the right of possession to depend upon the making of the payments. We cannot see in the provisions of the contract in question, or in the general circumstances in which it was made, any substantial indication that the contract is in reality a chattel mortgage rather than what it purports to be, a contract of conditional sale.

Counsel for the respondent forcefully argues that no effect should be given to a possession acquired by the defendant in this case through a resort to artifice or fraud, as he terms it. But this is beside the point. It is not suggested that possession was not obtained peaceably, and it is admitted that the plaintiff had been in default on the contract for several months and remains in default. As this is a contract for conditional sale, the plaintiff did not have the right of possession at the time the action was brought. Hence, there can be no recovery. This is not to justify the manner in which possession was obtained, but only to point out the element that is lacking in making out a case.

The trial court in a memorandum opinion stressed somewhat the inadequate development of the law in relation to contracts of conditional sale and pointed out wherein it failed to provide for substantial equities of purchasers. With this we are in accord, but the defects are such as to be remediable by legislative rather than by judicial action. In a number of states provision has been made by statute for a period of redemption or for a compulsory resale of property taken by a conditional vendor (2 Uniform Laws Annotated, Conditional Sales, Commissioners' Notes, pp. 29, 30 and 31), and the Uniform Conditional Sales Act contains provisions adequate to protect the rights of conditional vendees in these respects. See §§ 16 to 26, inclusive. Neither the Uniform Conditional Sales Act, nor any other act of similar import, has been adopted in this state, although the last session of the legislature did make provision whereby in certain circumstances a conditional vendee or a mortgagor might be permitted to cure a default. See chapter 222, Session Laws of 1933.

A proper disposition of this case in the light of our conclusions as to the principles of law applicable cannot be made without further attention to the issues presented by the pleadings. In addition to the answer in which the defendant justified the taking of the car under the conditional sales contract and claimed to be the owner thereof, the

defendant filed a counterclaim in which it offered to deliver the car to the plaintiff upon the payment of the amount due on the contract with interest from November 9, 1931, and the costs of repossessing the car and storing the same, $33.65, plus the costs of the action and attorney's fees. Further, in the event the court should decide the contract to be a chattel mortgage or decide that the defendant was not entitled to possession, the defendant prayed judgment in the alternative for the amount due under the contract, interest and costs, and that the car be sold to pay the same. In view of the counterclaim, of the fact that the defendant moved only for a new trial and not for a judgment non obstante, and of the findings of the trial court with reference to the manner in which possession was obtained, we are of the opinion that the action should not be dismissed but that a judgment should be entered giving to the plaintiff possession of the car upon payment of the balance remaining due, with interest. In the event the car cannot now be delivered to the plaintiff in substantially the condition it was at the time of the trial, the plaintiff should have judgment for the difference, if any in his favor, between the value at that time and the $161.20 balance remaining due. A new trial limited solely to these issues is awarded.

Judgment and order appealed from are reversed.

NUESSLE, Ch. J., and BURKE, CHRISTIANSON and BURR, JJ., concur.