**EDMUNDSON v. SCOFIELD et al.**
**Civ. A. No. 5043.**

United States District Court
S. D. Texas, Houston Division.
May 2, 1950.

Strong, Baker & Compton, of Houston, Tex. (John L. Compton), of Houston, Tex., for plaintiff.

Brian S. Odem, U. S. Atty., and William R. Eckhardt, Asst. U. S. Atty., of Houston, Tex., for defendant Frank Scofield.

McGregor & Sewell, of Houston, Tex. (Ben Sewell), of Houston, Tex., for defendant Daniel E. Bruhl.

CONNALLY, District Judge.

This action was instituted in the District Court of Harris County, Texas, by the plaintiff, seeking an injunction to restrain the defendant Scofield, Collector of Internal Revenue, from seizing or selling certain machinery and other personal property of Texas Die Casting Corporation, taxpayer. Plaintiff likewise sued one Daniel E. Bruhl, seeking rescission of a contract, or damages in tort, allegedly arising from the events hereinafter set out. The action was removed to this Court by the Collector, under Section 1442 of Title 28 U.S.C.A.

There is little dispute as to the facts. Texas Die Casting Corporation (hereinafter referred to as the taxpayer) was indebted to the United States for withholding and employment taxes; and on April 1, 1949, the Collector filed with the County Clerk of Harris County, Texas, a notice of tax lien covering same. On June 6, 1949, the Collector seized the machinery and chattels described as:

| | | |
|---|---|---|
| 1 M55a Die Caster H 162 A Zinc<br>1 Die Caster M55A H 108A Zinc<br>1 Die Caster AD 56 110 Aluminum<br>3 Ejector Boxes for Die Casters<br>1 AGM zinc furnace type A60, Ser.—1016<br>1 Pyrometer | } | hereinafter referred to as "Van Horn Mortgage Property" |
| 1 Harvill Zinc Die Caster, HD3A1 Motor 12601 | } | hereinafter referred to as "Bruhl Mortgage Property" |
| 1 Udylite-Mallory Standard Electro Plater | } | hereinafter referred to as "Kinney Mortgage Property" |
| 1 Willmington Compressor Model 1/5280, Serial #2107007 | } | hereinafter referred to as "Holder Equipment Co. Property" |
| 1 Wagner 5 HP Electric Motor<br>1 G.E. Motor for large tumbling BBL 3/4 HP<br>1 Westinghouse 3/4 HP Electric Motor 1180039A | } | hereinafter referred to as "Electric Motors" |
| 1 Van Dorn Molder, Model #1 Serial 432<br>3 100 Cu. Ft. Air Tanks<br>1 Small Custom Built Tumbling Barrel<br>69 Paper boxes of 300 6 x 6 x 1 sash lock Boxes<br>50 Paper boxes addressed to Tri-Products Co., Inc., St. Louis, Mo., containing sash locks<br>1 Large Custom Built Tumbling Barrel<br>1 High speed riveting hammer | } | hereinafter referred to as "Admittedly Taxpayer's Property" |

The plaintiff Edmundson alleges that he owns or has a lien prior to that of the Government in the said chattels, and alleges that he will be irreparably injured unless the Collector is restrained from selling the property.

Prior to August 8, 1947, the taxpayer was indebted to the defendant Daniel E. Bruhl

in the amount of $4,600.00, evidenced by a certain promissory note in that amount secured by a chattel mortgage upon the die caster, herein referred to as the Bruhl mortgage property. The chattel mortgage was duly filed by Bruhl with the County Clerk of Harris County, Texas, in compliance with Article 5490 of the Revised Civil Statutes of this state, Vernon's Ann. Civ.St. art. 5490. On August 8, 1947, the defendant Bruhl assigned the note and mortgage to the plaintiff Edmundson, as evidenced by written assignment. Edmundson did not file this assignment for record in compliance with the above-mentioned statute, and such assignment had never been placed of record prior to the date of trial. The assignment of this note and chattel mortgage was accompanied by a sale of a large block of stock of the taxpayer corporation from Bruhl to Edmundson, and the entire transaction was handled through an escrow agent (one of the large banks of this city). Bruhl executed a release of the note and chattel mortgage which, according to his testimony, he delivered with the note, mortgage and related papers to the escrow agent. Edmundson testified that he never received or saw the release; but by some means, not here disclosed, it was placed in the hands of the County Clerk. On being placed of record, and in absence of the recording of the assignment from Bruhl to Edmundson, the records of the County Clerk of Harris County showed the note to be satisfied and the chattel mortgage released.

The cause of action which the plaintiff alleged against Bruhl was predicated on the proposition that after making the assignment to the plaintiff, Bruhl had executed the release and himself placed it of record, thus tortiously causing loss of the plaintiff's security. When the undisputed evidence showed that Bruhl had not placed the release of record but had delivered it to the escrow agent, the plaintiff conceded that he had made no case against Bruhl, and the action against this defendant was dismissed at the conclusion of the evidence. Simultaneously with the purchase of the note, mortgage, and corporate stock from Bruhl, plaintiff acquired all of the other outstanding stock of the taxpayer corporation and from that time forward was the dominant factor in its operation. He put large sums of his own monies into the corporation and purchased equipment, met its pay roll, and made other advances for its benefit. On November 5, 1947, the Board of Directors of taxpayer corporation adopted a resolution providing that all monies advanced by the plaintiff, and all monies that might thereafter be advanced by him, to the corporation, be repaid as quickly as funds were available to the corporation for that purpose.

Van Horn Mortgage Property

■ In connection with the chattels described as the Van Horn mortgage property, the evidence showed that the Van Horn Company held a series of notes of the taxpayer, secured by chattel mortgage on such property. These notes were paid by the plaintiff from his personal funds. They were stamped "paid" by the Van Horn Company. A release of the mortgage was executed by the Van Horn Company, reciting that the mortgage was fully satisfied. None of these notes were endorsed in favor of, or assigned to, the plaintiff. I find that plaintiff had no lien upon any of this property, but held only an unsecured claim against the taxpayer for the amount of this advance.

Kinney Mortgage Property

■ Substantially the same may be said concerning the transaction surrounding the Kinney mortgage property. On November 12, 1947, plaintiff, out of his own funds, forwarded check to the holder of a note secured by the property in question marked "payment in full of balance on note * * *". The note was not endorsed or assigned to plaintiff but was forwarded to him by the holder. I make the same finding in connection with this property as was made concerning the Van Horn mortgage property.

Holder Equipment Company Property

■ This item was purchased in its entirety with the plaintiff's own funds after he became interested in the taxpayer cor-

poration. No vendor's lien was reserved by the seller, nor was any mortgage executed by the taxpayer in favor of the plaintiff. My finding is the same concerning this property as that involving the Van Horn and Kinney mortgage properties.

## Admittedly Taxpayer's Property

At the time of trial, the plaintiff admitted that each of these items was owned in its entirety by the taxpayer, and plaintiff claimed no interest therein.

## Electric Motors

Among the items of machinery seized by the Collectors were the several electric motors. The evidence shows without dispute that these motors were never purchased by the taxpayer but belonged to the plaintiff. He owned and used them (and many others) in other businesses in which he was engaged, and installed such motors in the taxpayer's plant from time to time. Frequently an exchange was made between the plaintiff's stock and those in use by the taxpayer. Despite the fact that the taxpayer carried such items on its own books and claimed depreciation on them, I find that these motors at all times were the personal property of the plaintiff, and the taxpayer had no interest therein.

## Bruhl Mortgage Property

Article 5490, Revised Civil Statutes of this state, reads in part as follows: "Every chattel mortgage, deed of trust, or other instrument of writing, intended to operate as a mortgage, or lien upon personal property, and *every transfer thereof* which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged, pledged, or affected by such instrument, *shall be absolutely void* as against the creditors of the mortgagor or person making same, as against subsequent purchasers and mortgagees or lien holders in good faith, unless such instrument, or a true copy thereof, shall be forthwith deposited with and filed in the office of the County Clerk * * *." (Emphasis mine.)

The "creditors" referred to in the statute are creditors who have acquired some character of lien upon the property, as distinguished from general creditors, see the many annotations to Art. 5490, Vol. 16, p. 212, Vernon's Ann.Civ.Stat. The United States acquired such lien when it followed the statutory procedure provided therefor. Title 26, U.S.C.A. § 3670 et seq.

At the time the Government's lien was impressed upon the property, there was no unsatisfied lien of record. The Bruhl mortgage appeared to have been released. The plaintiff could have protected himself simply by placing his assignment of record. When he failed to do so, he must have realized that it lay within the power of Bruhl to release the mortgage of record. Through some instrumentality which the evidence does not disclose, this very contingency came to pass. His unrecorded assignment is *absolutely void* against a lien creditor, as is the Government here. Having failed to take the most obvious and simple precautions to protect his security, he cannot seek the aid of a court of equity to protect it for him.

I conclude that plaintiff is entitled to an injunction restraining the defendant from selling the electric motors, but nothing else.

The foregoing Memorandum is adopted as Findings of Fact and Conclusions of Law.